**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**VICTOR M. LOPEZ, LUIS N. ABREU FAÑA, JOAN E. BIDO VALDEZ, ALEX R. DURÁN, JUAN PABLO GÓMEZ REYES, EDUARDO OLAVERRIA, JUAN P. HOLGUIN, and EDWIN PEREZ, individually and on behalf of all others similarly situated,**

**Plaintiffs,**

**- against-**

**ACME AMERICAN ENVIRONMENTAL CO., INC., ACME AMERICAN REPAIRS, INC., ACME AMERICAN REFRIGERATION, INC., FACTORY PARTS & SERVICE CO., INC., JEFFREY SCHWARTZ, KENNETH STAHN, DAVID ESTES, BIRINDER MADAN, DERVAL LAZZARI, AND JOHN AND JANE DOES 1 through 10,**

**Defendants.**

**Index No.: CV 12-0511 (WHP)**

**JOINT REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE JOINT MOTION TO DISMISS BY THE DEFENDANTS, ACME AMERICAN REPAIRS, INC., ACME AMERICAN REFRIGERATION, INC., FACTORY PARTS & SERVICE CO., INC., BIRINDER MADAN, AND DERVAL LAZZARI**

**SAHN WARD COSCHIGNANO & BAKER PLLC**
*Attorneys At Law*
333 Earle Ovington Boulevard, Suite 601
Uniondale, New York 11553
516-228-1300 · 516-228-0038 (Fax)

**PADUANO & WEINTRAUB**
*Attorneys At Law*
1251 Avenue of the Americas, Ninth Floor
New York, New York 10020
212-785-9100 · 212-785-9099 (Fax)

# TABLE OF CONTENTS

TABLE OF CONTENTS ..... i

TABLE OF AUTHORITIES ..... ii

PRELIMINARY STATEMENT ..... 1

POINT I ..... 2

THE PLAINTIFFS' ARGUMENT THAT THEY HAVE SUFFICIENTLY PLEAD THAT THE MOVING CORPORATE DEFENDANTS ARE JOINT EMPLOYERS UNDER THE FLSA AND THE NYLL LACKS MERIT.. ..... 2

POINT II ..... 8

THE FLSA AND NYLL CLAIMS IN THE AMENDED COMPLAINT AS AGAINST DEFENDANTS MADAN AND LAZZARI SHOULD BE DISMISSED BECAUSE THEY ARE NOT "EMPLOYERS" ..... 8

POINT III ..... 12

PLAINTIFFS' BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED ..... 12

POINT IV ..... 13

PLAINTIFFS' UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED ..... 13

POINT V ..... 14

THE COURT SHOULD NOT EXERCISE SUPPLEMENTAL JURISDICTION OVER THE FOURTH AND SEVENTH CAUSES OF ACTION ..... 14

CONCLUSION ..... 15

**Cases**

*Ansoumana v. Gristede's Operating Corp.*,
201 F.R.D. 81 (S.D.N.Y. 2001) .......... 14
*Ansoumana v. Gristede's Operating Corp.*,
255 F. Supp. 2d 184 (S.D.N.Y. 2003).......... 11
*Archie v. Grand Central Partnership*,
997 F. Supp. 504 (S.D.N.Y. 1998)..........3-6
*Barfield v. New York City Health and Hospitals Corp.*,
537 F.3d 132 (2d Cir. 2008).......... 6
*Brady v. Calyon Securities (USA)*,
406 F. Supp. 2d 307 (S.D.N.Y. 2005).......... 12
*Burns Jackson Miller Summit & Spitzer v. Lindner*,
59 N.Y.2d 314, 464 N.Y.S.2d 712 (1983) .......... 12
*Carter v. Dutchess Community College*,
735 F.2d 8 (2d Cir. 1984).......... 6
*Chung v. New Silver Palace Rest., Inc.*,
246 F. Supp. 2d 220 (S.D.N.Y. 2002).......... 11
*Donovan v. Easton Land & Development, Inc.*,
723 F.2d 1549 (11th Cir. 1984).......... 6
*Ellicott Group, LLC v. State of N.Y. Executive Dept. Office of Gen. Services*,
85 A.D.3d 48, 922 N.Y.S.2d 894 (4th Dept. 2011) .......... 12
*Herman v. RSR Sec. Services Ltd.*,
172 F.3d 132 (2d Cir. 1999)..........6, 9, 11
*Jiao v. Shi Ya Chen*,
2007 WL 4944767 (S.D.N.Y. Mar. 30, 2007) .......... 11
*Kaye v. Grossman*,
202 F.3d 611 (2d Cir. 2000).......... 14
*Matter of Erie County Indus. Dev. Agency v. Roberts*,
94 A.D.2d 532, 465 N.Y.S.2d 301 (4th Dep't 1983),
*aff'd for the reasons stated*, 63 N.Y.2d 810 (1984) .......... 13
*Matter of New York Charter School Assn. v. Smith*,
15 N.Y.3d 403, 914 N.Y.S. 2d 696 (2010) .......... 13
*Patel v. Wargo*,
803 F.2d 632 (11th Cir. 1986)..........3, 6
*Prime Mover Capital Partners, L.P. v. Elixir Gaming Technologies, Inc.*,
793 F. Supp. 2d 651 (S.D.N.Y. 2011).......... 14
*Simon v. Keyspan Corp.*,
2011 WL 1046119 (S.D.N.Y. Mar. 22, 2011) .......... 14

*Torres v. Gristede's Operating Corp.*,
2011 WL 4571792 (S.D.N.Y. Sept. 9, 2011)....................................................10
*Tracy v. NVR, Inc.*,
2009 WL 3153150 (W.D.N.Y. Sept. 30, 2009), *report and recommendation adopted in relevant part*, 667 F. Supp. 2d 244 (W.D.N.Y. Nov. 5, 2009)....................................................11
*Walling v. Portland Terminal Co.*,
330 U.S. 148 (1947)....................................................6
*Wolman v. Catholic Health Sys. of Long Island, Inc.*,
2012 WL 566255 (E.D.N.Y. Feb. 16, 2012)....................................................7
*Zheng v. Liberty Apparel Co., Inc.*,
355 F.3d 61 (2d Cir. 2003)....................................................6

**Statutes**

28 U.S.C. § 1367(c)(3)....................................................14
29 U.S.C. § 203(s)....................................................6

**Regulations**

29 C.F.R. § 791.2(b)....................................................2, 3

**PRELIMINARY STATEMENT**

This Joint Reply Memorandum of Law is submitted by the Defendants, Acme American Repairs, Inc. ("Acme Repairs"), Acme American Refrigeration, Inc. ("Acme Refrigeration"), Factory Parts & Service Co., Inc. ("Factory Parts") (collectively, the "Moving Corporate Defendants"), Birinder Madan ("Madan"), and Derval Lazzari ("Lazzari") (collectively, the "Moving Individual Defendants") (together collectively, the "Moving Defendants"), in further support of their motion to dismiss the Amended Complaint against them, and to respond to the arguments raised by the Plaintiffs in opposition to the motion.

The Plaintiffs' Opposition makes light of key material facts that are necessary for the Plaintiffs to state a claim against the Moving Defendants. Regarding the Moving Corporate Defendants, the Plaintiffs allege in their Amended Complaint that the Defendant Acme American Environmental Co., Inc. ("Acme Environmental") is the only defendant that provides cleaning services and that the Plaintiffs were employed as cleaners. The Plaintiffs failed to dispute that the Moving Corporate Defendants did not exercise any control over the Plaintiffs. Regarding Madan and Lazzari, the Plaintiffs' allegations are likewise insufficient to establish employer liability claims against them. The Plaintiffs rely on broad conclusory allegations and only point to single instances in which Madan had contact with one of the plaintiffs and Lazzari had contact with the Plaintiffs. The Plaintiffs admit that Madan and Lazzari did not have regular direct contact with the Plaintiffs, did not determine their daily work schedules, did not sign their paychecks and did not hire or fire them. Accordingly, the Plaintiffs' claims against the Moving Defendants under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") must be dismissed. Additionally, the Plaintiffs do not set forth viable breach of contract and unjust enrichment claims against the Moving Defendants. The Plaintiffs have not

alleged that they performed work for Acme Environmental pursuant to a public agency contract nor do they allege that the Moving Defendants were enriched. Accordingly, these claims against the Moving Defendants also should be dismissed.

## POINT I

## THE PLAINTIFFS' ARGUMENT THAT THEY HAVE SUFFICIENTLY PLEAD THAT THE MOVING CORPORATE DEFENDANTS ARE JOINT EMPLOYERS UNDER THE FLSA AND THE NYLL LACKS MERIT

In their opposition, the Plaintiffs have ignored the Moving Corporate Defendants' argument that they are not the Plaintiffs' employer under the "economic reality test," and that the Plaintiffs failed to allege sufficient plausible facts showing that the Moving Corporate Defendants exercised sufficient control over the Plaintiffs to be considered the Plaintiffs' employer under the FLSA and the NYLL. Defs.' Joint Mem. in Supp. of Mot. to Dismiss ("Defs.' Joint Mem."), at 8. Instead, the Plaintiffs set forth several flawed arguments which do not support a finding that the Moving Corporate Defendants are the Plaintiffs' employers under the FLSA or the NYLL. First, the Plaintiffs rely on an incomplete citation of 29 C.F.R. § 791.2(b), which, when reviewed in total, is of no avail to the Plaintiffs. *See* Pls.' Mem. in Opp. to Mot. to Dismiss ("Pls.' Mem.") at 17. In this regard, 29 C.F.R. § 791.2(b) states:

> Where the *employee performs work which simultaneously benefits two or more employers*, or *works for two or more employers at different times during the workweek*, a joint employment relationship generally will be considered to exist in situations such as:
>
> (1) Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees;
>
> (2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee;
>
> (3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of

> the fact that one employer controls, is controlled by, or is under common control with the other employer.

29 C.F.R. § 791.2(b) (internal footnotes omitted) (emphasis added).

Here, the Amended Complaint does not allege that the Plaintiffs performed any work which simultaneously benefited two or more employers, or that the Plaintiffs worked for two or more employers at different times during a workweek. Rather, the Plaintiffs allege in their Amended Complaint that Acme Environmental is the only defendant that provides cleaning services and that the Plaintiffs were employed as cleaners. Am. Compl. ¶¶ 2, 18, 55. The only logical conclusion that can be drawn from these allegations is that the Plaintiffs were employed only by Acme Environmental, and not the Moving Corporate Defendants.

Second, the Plaintiffs allege that because the Moving Corporate Defendants are part of the "Acme Group," an alleged "single integrated enterprise," the Moving Corporate Defendants must be deemed the Plaintiffs' employer. In doing so, the Plaintiffs incorrectly equate "enterprise coverage" under the FLSA with "employer liability" under the FLSA. As discussed in *Patel v. Wargo*, 803 F.2d 632 (11th Cir. 1986), there is a distinction between "enterprise coverage" and "employer liability." To clarify, in the event that an entity or group of entities is an "enterprise" under 29 U.S.C. § 203(r), then they are covered by, and thus must comply with, the FLSA. In the event that an employer-employee relationship exists between the plaintiff and the defendant, then the defendant-employer would be liable to the plaintiff-employee (assuming an existing FLSA violation). *See* Defs.' Joint Mem. at 14-15.

The Plaintiffs contend that the District Court "performed the integrated enterprise analysis in *Archie v. Grand Central Partnership*, 997 F. Supp. 504, 528 & 531 (S.D.N.Y. 1998), to determine whether each of the three defendants [in that case] shared employer liability." Pls.' Mem. at 18. This is incorrect. The District Court applied the integrated enterprise analysis to

determine whether the defendants were covered by, and thus must comply with the FLSA. The District Court, however, was not presented with the issue of whether defendants were the plaintiffs' "employer" under the FLSA.

In *Archie,* the plaintiffs, who were formerly homeless and jobless individuals, alleged that the defendants Grand Central Partnership ("GCP"), Grand Central Partnership Social Services Corporation ("SSC"), and 34th Street Partnership ("34th SP"), "unlawfully paid them sub-minimum wages to perform clerical, administrative, maintenance, food service, and outreach work in the defendants' Pathways to Employment Program." *Id.*, at 507. The two issues presented in the case were whether the defendants were an enterprise under the FLSA, and whether the plaintiffs were trainees as opposed to employees. The District Court found that the defendants were an enterprise and that the plaintiffs were employees and not trainees.

The Pathways to Employment Program at issue in *Archie* is described as follows. SSC ran a "multi-service drop-in center" for the homeless for which it received funding from, among others, New York City. *Id.*, at 508. GCP incorporated SSC in order to allow GCP to obtain grants from New York City to operate the center. *Id.*, at 508, 522. Homeless individuals visiting the center were known as "contacts" or "clients." *Id.*, at 509. Pursuant to a contract with New York City, SSC provided "counseling, referrals, clothing, showers, and mail access to clients wishing such services." *Id.*, at 508. The contract also required SSC to operate an outreach program. *Id.* At the center, SSC also operated the Pathways to Employment Program ("PTE Program"). *Id.* Some clients opted to join the PTE Program. *Id.*, at 509. Once a participant entered the PTE Program, they were assigned to work in one of five areas: maintenance, food services, administration, outreach, and recycling. *Id.* The program enabled SSC to obtain significant revenue-generating contracts with outside corporations by underbidding businesses

which compensated their employees at higher rates. *Id.*, at 508-12. Participants in the PTE Program worked 8 hours a day for 5 days, *i.e.*, 40 hours per week, at a rate ranging from $40-$60 per week; if a participant worked less, their pay was correspondingly reduced. *Id.*, at 509, 513, 517-18.

The defendants, GCP, SSC, and 34th SP, were closely affiliated. *Id.*, at 511. GCP's controller described SSP as a subsidiary of GCP. *Id.*, at 511, 521. One of the defendants' agents, also described SSC as a subsidiary of GCP, and stated that SSC resembled a department of GCP. *Id.*, at 511. "The defendants' operations [] overlap[ped] to a significant degree." *Id.*, at 522. The defendants shared employees, including key executives, office space, and operations. *Id.*, at 511, 522. They also shared financial and executive services. *Id.*, at 522. On at least one occasion, GCP rather than SSC signed a contract to provide outreach services using PTE participants. *Id.* Also, to obtain a HUD grant to be used by SSC, GCP submitted a proposal to HUD and handled the funds. *Id.* Additionally, on certain occasions, PTE Program participants worked on special assignments, which arose out of agreements pursuant to which GCP, SSC or 34th SP agreed to provide day laborers at a per hour rate. *Id.*, at 516. The defendants used the same pool of PTE participants to perform services and other activities in both the GCP and 34th SP areas. *Id.*, at 522. When SSC wanted funds to pay its PTE participants, it made a request to GCP or 34th SP. *Id.* All three defendants also used a common form for payroll changes. *Id.*

As mentioned above, the plaintiffs sued the defendants, claiming violations of the FLSA and NYLL. Ultimately, a bench trial was held, and the defendants presented two arguments before the court: (1) GCP, SSC, and 34th SP were not an enterprise engaged in interstate commerce or in the production of goods for interstate commerce (*i.e.*, they were covered by the FLSA); and (2) the plaintiffs were trainees, rather than employees. *Id.*, at 524; *see id.*, at 531

(stating that the Supreme Court in *Walling v. Portland Terminal Co.*, 330 U.S. 148 (1947), held that trainees are not employees under the FLSA during their training period). First, the Court reviewed the elements regarding enterprise theory of coverage (related activities, unified operation and control, and common business purpose), and found that GCP, SSC, and 34th SP were a common enterprise under the FLSA. *Id.*, at 525-28. As to the interstate commerce requirement, *see* 29 U.S.C. § 203(s), the Court found that the defendants were an enterprise that engaged in commerce, that the plaintiffs engaged in the handling goods or materials that have moved in or were produced for commerce, and that the defendants earned in excess of the $500,000.00 statutory gross volume requirement. *Id.*, at 528-31. Second, the Court reviewed a non-exhaustive six-part test used to determine whether a trainee is in fact an employee (distinct from the "economic reality" test at issue in the instant action), and found that the plaintiffs were employees (and not trainees) for purposes of the FLSA. *Id.*, at 531-36.

For reasons unstated in *Archie*, the defendants did not raise, and the District Court did not discuss, the enterprise coverage/employer liability distinction in *Patel*. The defendants also did not raise, and the District Court also did not discuss, *Carter v. Dutchess Community College*, 735 F.2d 8 (2d Cir. 1984), regarding the formal control factors of the "economic reality" test. *Archie* also pre-dates the Second Circuit's decisions in *Herman v. RSR Sec. Services Ltd.*, 172 F.3d 132 (2d Cir. 1999), *Zheng v. Liberty Apparel Co., Inc.*, 355 F.3d 61 (2d Cir. 2003) and *Barfield v. New York City Health and Hospitals Corp.*, 537 F.3d 132 (2d Cir. 2008), which further discussed the "economic reality" test and employer liability. Here, the Moving Defendants cited and discussed all of these cases in their joint memorandum of law in support of their argument that the Plaintiffs have not alleged sufficient plausible facts that the Moving Corporate Defendants

are the Plaintiffs' employer, and thus, that the Plaintiffs' case should be dismissed against them. *See* Defs.' Joint Mem. at 9-16.

Likewise, the Plaintiffs' citation to *Donovan v. Easton Land & Development, Inc.*, 723 F.2d 1549 (11th Cir. 1984), which pre-dates *Patel*, is inapposite to the instant case. *See* Pls.' Mem. at 19. There, the Eleventh Circuit discussed enterprise theory of coverage – not employer liability – under the FLSA, and affirmed the District Court's decision that a hotel and a lounge (located in the hotel) were not an enterprise under the FLSA.

Finally, the Plaintiffs incorrectly attempt to distinguish the instant action from *Wolman v. Catholic Health Sys. of Long Island, Inc.*, 2012 WL 566255 (E.D.N.Y. Feb. 16, 2012). In *Wolman*, the District Court found that the plaintiffs' allegations that the defendants constituted an integrated enterprise were insufficient to show purported liability under the FLSA, because the allegations did not touch on the central issue of "whether the defendants exercised sufficient control over plaintiffs to be considered their joint employers under the FLSA." *Wolman*, 2012 WL 566255, *5. Here, the Plaintiffs argue that the Amended Complaint alleges "specific details" regarding the Moving Corporate Defendants and Acme Environmental instead of general commonalities. Pls.' Mem. at 21. But, the Plaintiffs' purported "specific details" concern whether the Moving Corporate Defendants form an integrated common enterprise (e.g., allegations that they share some, but not complete overlapping ownership, share a principal place of business, chemicals, a bookkeeper, an accountant, and a general manager), rather than whether the Moving Corporate Defendants exercised control over them. *See* Am. Compl. ¶¶ 22-25, 34-35. Because the Amended Complaint lacks factual allegations showing that the Moving Corporate Defendants exercised sufficient control over the Plaintiffs to be considered the Plaintiffs' joint employer, the Amended Complaint should be dismissed against them.

## POINT II

## THE FLSA AND NYLL CLAIMS IN THE AMENDED COMPLAINT AS AGAINST DEFENDANTS MADAN AND LAZZARI SHOULD BE DISMISSED BECAUSE THEY ARE NOT "EMPLOYERS"

The Plaintiffs' arguments in their Opposition do not save their FLSA and NYLL claims against Madan or Lazzari. As the Plaintiffs' Amended Complaint alleges and their Opposition concedes, the Plaintiffs did not report to the Moving Individual Defendants but reported to Individual Defendants Jeffrey Schwartz ("Schwartz") and Kenneth Stahn ("Stahn"). Am. Compl. ¶¶ 23, 50; Pls.' Mem. at 13-14. As the Plaintiffs also now concede, Lazzari did not have any power to hire or fire Acme Environmental employees. Pls.' Mem. at 13-14. The Plaintiffs also concede that Madan did not have any influence in scheduling the Plaintiffs or other Acme Environmental employees' work schedules. Pls.' Mem. at 13-14. The Plaintiffs concede that Madan and Lazzari did not control payroll, keep the payroll records or sign payroll checks on behalf of Acme Environmental. *Id.* The Plaintiffs further concede that neither Madan nor Lazzari maintained corporate records for Acme Environmental. *Id.*, at 13.

The Plaintiffs do not allege that Madan controlled employee schedules or rates of pay, regularly hired employees,[1] fired employees, controlled corporate records, signed pay checks or otherwise supervised or controlled employees. With respect to Lazzari, the Plaintiffs do not

---

1 The Plaintiffs make the conclusory allegation that Madan had the authority to hire Acme Environmental employees (Am. Compl. ¶ 45), but the reality is that Madan has been affiliated with Acme Environmental since its inception in or about 1997 (Am. Compl. ¶ 33) and the Plaintiffs allege that he has been involved in hiring three Acme Environmental employees during that time, none of which are plaintiffs herein (Am. Compl. ¶ 45). In fact, Madan did not hire any of the three individuals identified and Acme Environmental has no record of an employee named "Eliezer Collado". Regardless, such infrequent hiring of employees is clearly incidental to Madan's affiliation with Acme Environmental for so many years.

allege that he hired or fired employees, that he regularly controlled employee schedules,[2] that he controlled employee rates of pay, signed pay checks or otherwise supervised or controlled employees. Accordingly, the Amended Complaint fails to allege that either Madan or Lazzari are employers under the FLSA or NYLL.

The Plaintiffs' reliance on the Second Circuit's decision in *Herman*, 172 F.3d at 140, holding that the Chairman of the defendant company was an "employer" under the FLSA, is not persuasive. The *Herman* Court held that the "'economic reality' test encompasses the totality of circumstances." *Id.*, at 139. In *Herman*, the Court concluded that the Chairman was an employer where three of the four factors articulated by the Court were satisfied. There, the Chairman (a) had the authority, and did, hire employees, (b) supervised and controlled employee work schedules, was in charge of assignments to work locations and reviewed employment applications, and (c) signed payroll checks and ordered a stop to the issuance of 1099's to security guards employees. *Id.*, at 140. The Court also considered the fact that the Chairman frequently and regularly instructed management how to run the business operations. *Id.*

The facts present in *Herman*, which the Second Circuit relied upon, are absent here. Here, the totality of the allegations against Madan and Lazzari establish that they were owners of Acme Environmental who acted as figureheads and that Defendant Schwartz ran Acme Environmental's day-to-day business with the help of Defendants Stahn and Estes. *See* Am. Compl. ¶¶ 23, 41, 50 and 52. The Plaintiffs try and lump Madan and Lazzari together, alleging that because one hired three employees and the other directed other employees to a work site on one occasion, that collectively they satisfy the *Herman* test. As is noted above, with respect to

---

2 The Plaintiffs make the conclusory allegation that Lazzari scheduled the Plaintiffs and others similarly to work on particular jobs and to "perform clean-up work around the Acme Group building," but allege only that Lazzari scheduled work for Acme Environmental employees on one instance to work at McDonalds at Penn Station. See Am. Compl. ¶ 47. The Plaintiffs do not allege that Lazzari ever scheduled the Plaintiffs to work at that McDonalds.

Madan, the Amended Complaint does not allege that he supervised or controlled employee work schedules or pay, that he signed pay checks or otherwise had any involvement with employee compensation, that he regularly hired employees or had the authority to fire employees or that he dictated to management how to run the company. The Amended Complaint does not allege that Lazzari had the power to hire or fire employees, that he regularly controlled employee work schedules, that he signed pay checks or otherwise had any involvement with employee compensation or that he dictated to management how to run the company. Accordingly, the allegations here do not support a finding that Madan and Lazzari are "employers" under the FLSA and NYLL.

The Plaintiffs also improperly rely on *Torres v. Gristede's Operating Corp.*, 2011 WL 4571792 (S.D.N.Y. Sept. 9, 2011). In *Torres*, the Court found the president of the corporate defendant to be an "employer" where the president (a) signed all pay checks to the class members, (b) hired and fired employees, (c) had overall control over corporate operations including controlling corporate banking and real estate operations, reviewing corporate financials and presiding over day-to-day corporate activities and (d) had the power to open and close Gristede's stores. *Id.*, at *2-*3. The Court found that this evidence was significant and ultimately held that "it is pellucidly clear that [the individual defendant] is the one person who is in charge of the corporate defendant." *Id.*, at *3. No such allegations have been made in this case. Rather, the Amended Complaint alleges that Schwartz runs Acme Environmental. *See* Am. Compl. ¶¶ 23, 41.

The Plaintiffs continuously rely on the allegation that Defendant Schwartz "considered" both Madan and Lazzari to be the "boss." However, they cite no authority for the proposition that if a supervisor or manager refers to an owner as a "boss" the owner is then presumed to have

control over the company sufficient to render such owner an "employer" under the FLSA or NYLL. Moreover, although the Amended Complaint makes broad allegations that Madan and Lazzari had certain control or power over Acme Environmental policies and employees (Pls.' Mem. at 13), it does not allege what those powers are or that they exercised any such alleged powers. The Plaintiffs' allegation that because Madan and Lazzari maintain office space at 99 Scott Avenue in Brooklyn -- the same building as Acme Environmental -- they therefore have a "hands-on presence" at Acme Environmental is unavailing. *See* Pls.' Mem. at 16.

Generally, where New York courts have found corporate officers and owners to be employers, they have "had some direct contact with the plaintiff employee, such as personally supervising the employee's work, including determining the employee's day-to-day work schedule or tasks, signing the employee's paycheck or directly hiring the employee." *Tracy v. NVR, Inc.*, 2009 WL 3153150, *4 (W.D.N.Y. Sept. 30, 2009), *report and recommendation adopted in relevant part*, 667 F. Supp. 2d 244 (W.D.N.Y. Nov. 5, 2009).[3] Here, the Amended Complaint does not allege that Madan had any direct contact with the Plaintiffs at all, aside from the allegation that he told Plaintiff Durán that when there was a problem he should come to him. Moreover, the alleged contact between Lazzari and the Plaintiffs (that he allegedly directed them to perform clean-up work around the Acme Group building) is insufficient.

---

[3] *See also Herman*, 172 F.3d at 140 (chairman was liable as employer because he hired managerial staff, occasionally "supervised and controlled employee work schedules and the conditions of employment," and signed payroll checks); *Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184, 193 (S.D.N.Y. 2003) (founders, owners and sole shareholders were liable as employers because they together "personally over[saw] and operate[d] the companies and their [plaintiff] agents on a daily basis"); *Chung v. New Silver Palace Rest., Inc.*, 246 F. Supp. 2d 220, 227 (S.D.N.Y. 2002) (shareholders had "hands-on" contact with the plaintiff employees, were involved in their hiring and firing, supervision and compensation); *Jiao v. Shi Ya Chen*, 2007 WL 4944767, *10 (S.D.N.Y. Mar. 30, 2007) (president was liable where she hired plaintiff, informed him of his pay rate, paid him, set his schedule, and supervised and determined plaintiff's responsibilities).

Accordingly, the Plaintiffs' allegations are insufficient to set forth a cause of action under the FLSA and NYLL against Madan and Lazzari.

**POINT III**

**PLAINTIFFS' BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED**

The Amended Complaint does not set forth a viable breach of contract claim against the Moving Defendants. The Plaintiffs concede that there is no contract between the Plaintiffs and the Moving Defendants or between the Plaintiffs and Acme Environmental, and instead, argue in their Opposition that they can maintain a breach of contract claim on the basis that they purportedly are third-party beneficiaries of Acme Environmental's contracts with public agencies. *See* Pls.' Mem. at 16. However, claims for breach of contract as intended third-party beneficiaries still require the existence of a contract. *See e.g., Brady v. Calyon Securities (USA)*, 406 F. Supp. 2d 307, 313 (S.D.N.Y. 2005) (finding that breach of contract claim required a contract to be able to succeed and the contract must be intended for the third party beneficiary); *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 336, 464 N.Y.S.2d 712 (1983) (recognizing that a third party may be the beneficiary of a contract only by establishing (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit, and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost). *See also Ellicott Group, LLC v. State of N.Y. Executive Dept. Office of Gen. Services*, 85 A.D.3d 48, 922 N.Y.S.2d 894 (4th Dept. 2011) ("In order for the prevailing wage law to apply, two conditions must be met: (1) the public agency must be a party to a contract involving the employment of laborers, work[ers], or mechanics, and (2) the contract must concern a public works project" (citing *Matter of Erie County Indus. Dev. Agency v. Roberts*, 94

A.D.2d 532, 537, 465 N.Y.S.2d 301 (4th Dept. 1983), *aff'd for the reasons stated*, 63 N.Y.2d 810 (1984); *Matter of New York Charter School Assn. v. Smith*, 15 N.Y.3d 403, 408, 914 N.Y.S. 2d 696 (2010)).

Here, the Amended Complaint does not allege that the Plaintiffs performed work for Acme Environmental pursuant to a public agency contract nor does it allege that Acme Environmental had contracts with public agencies during the Plaintiffs' tenure. Instead, the Amended Complaint contains the vague allegation that "Defendants contracted with public agencies" (Am. Compl. ¶ 104), which, standing alone, is insufficient to form the basis of the Plaintiffs' claim. Additionally, even if the Plaintiffs' allegations sufficiently plead the existence of a contract between them and public agencies concerning public improvements, the Plaintiffs would only be able to state a claim against the Moving Defendants under this theory if they also plead sufficient facts showing that the Moving Defendants were their employers. As shown above, the Plaintiffs failed to plead such facts, thus the breach of contract claim should be dismissed.

**POINT IV**

**PLAINTIFFS' UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED**

The Plaintiffs' Opposition fails to address the first required element of an unjust enrichment claim – that "Defendants" were enriched – and instead focuses upon the second element – that the enrichment was at plaintiff's expense, *i.e.*, that the Plaintiffs performed work for Acme Environmental for which they were not paid.

As is set forth in the Moving Defendants' Joint Motion to Dismiss, the Plaintiffs' broad allegation that "Defendants, by their policies and actions, benefited from, and increased their profits and personal compensation by failing to pay Plaintiffs" all wages due (Am. Compl. ¶ 119) is not sufficiently specific or direct with respect to the Moving Defendants. Notably absent from

the Amended Complaint are allegations that Madan and Lazzari received a salary or other compensation from Acme Environmental or that Acme Environmental co-owners or shareholders or the Moving Corporate Defendants directly profited from the alleged wage underpayments to the Plaintiffs. Such specific allegations are required to maintain an unjust enrichment claim. *See Simon v. Keyspan Corp.*, 2011 WL 1046119, *12 n.143 (S.D.N.Y. Mar. 22, 2011) (unjust enrichment claim dismissed because plaintiff failed to allege that defendants received a "specific and direct benefit" from plaintiff."); *Prime Mover Capital Partners, L.P. v. Elixir Gaming Technologies, Inc.*, 793 F. Supp. 2d 651, 679 (S.D.N.Y. 2011) (unjust enrichment claim dismissed where plaintiffs did not allege a direct benefit to the other defendants of the type required to make out a claim); *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (unjust enrichment claim requires that defendant receive a "specific and direct benefit").

Accordingly, the unjust enrichment claim against the Moving Defendants should be dismissed.

## POINT V

## THE COURT SHOULD NOT EXERCISE SUPPLEMENTAL JURISDICTION OVER THE FOURTH AND SEVENTH CAUSES OF ACTION

Finally, in addressing supplemental jurisdiction, the Plaintiffs in their opposition state that the "Defendants do not suggest that any of the discretionary factors listed in 28 U.S.C. § 1367(c) for declining supplemental jurisdiction exist here." Pls.' Mem. at 25. To the contrary, the Moving Defendants specifically cited 28 U.S.C. § 1367(c)(3), as well as United States Supreme Court and Second Circuit case law, as a basis for the Court to dismiss the Fourth Cause of Action (breach of contract) and Seventh Cause of Action (unjust enrichment) in the event that the Court dismisses the FLSA and NYLL claims. Defs.' Joint Mem. at 26-27. Further, the Plaintiffs misplace their reliance on *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81

(S.D.N.Y. 2001), in claiming that the Court should exercise supplemental jurisdiction over the Moving Defendants on the common law claims. Pls.' Mem. at 25. *Ansoumana*, however, does not discuss motions to dismiss or 28 U.S.C. § 1367(c)(3). Simply put, there is no basis to retain supplemental jurisdiction over the Moving Defendants in the event that there are insufficient allegations to find that the Moving Defendants are the Plaintiffs' employers (the root of all of the Plaintiffs' causes of action). As such, the Plaintiffs' Fourth and Seventh Causes of Action should be dismissed.

**CONCLUSION**

Based on the foregoing, and in the Moving Defendants' initial motion papers, the Court should grant the Moving Defendants' motion, and dismiss the Amended Complaint against them.

Dated: Uniondale, New York
July 19, 2012

**SAHN WARD COSCHIGNANO & BAKER, PLLC**

By: Ralph Branciforte
**RALPH BRANCIFORTE, ESQ.**
**JON A. WARD, ESQ.**
**ADAM H. KOBLENZ, ESQ.**
333 Earle Ovington Bouleavard, Suite 601
Uniondale, New York 11553
516-228-1300
*Attorneys for Defendants, Acme American Environmental Co., Inc., and the Moving Corporate Defendants*

Dated: New York, New York
July 19, 2012

**PADUANO & WEINTRAUB LLP**

By: Alicia Etre
**MEREDITH CAVALLARO, ESQ.**
**ALICIA ETRE, ESQ.**
1251 Avenue of the Americas, Ninth Floor
New York, New York 10020
212-785-9100
*Attorneys for Defendants Jeffrey Schwartz, Kenneth Stahn, David Estes, Birinder Madan, and Derval Lazzari*

**AFFIDAVIT OF SERVICE**

**STATE OF NEW YORK** }
} **ss.:**
**COUNTY OF NASSAU** }

Teresa Salzan, being duly sworn, deposes and says, that deponent is not a party to this action, is over 18 years of age and resides in Rocky Point, New York.

That on the 19th day of July, 2012, deponent served the within **JOINT REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION TO DISMISS BY THE DEFENDANTS, ACME AMERICAN REPAIRS, INC., ACME AMERICAN REFRIGERATION, INC., FACTORY PARTS & SERVICE CO., INC., BIRINDER MADAN, AND DERVAL LAZZARI** on the attorney(s) herein listed at the address designated by said attorney(s) via ECF Filing.

**Stephanie Amin-Giwner, Esq.**
**Julie Salwen, Esq.**
**ABBEY SPANIER RODD & ABRAMS, LLP**
212 East 39th Street
New York, New York 10016
(212) 889-3700
samin@abbeyspanier.com
jsalwen@abbeyspanier.com

Teresa Salzan

Sworn to before me this
19th day of July, 2012

Notary Public

JOANNE PALLOTTA
NOTARY PUBLIC, State of New York
No. 52-4711561
Qualified in Suffolk County
Commission Expires September 30, 2014