UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
VICTOR M. LOPEZ, *et al.*,          :
                                 12 Civ. 511 (WHP)
                Plaintiffs,      :
                                 MEMORANDUM & ORDER
   -against-                       :

ACME AMERICAN ENVIRONMENTAL CO.,    :
INC., *et al.*,
                              :

                Defendants.      :
------------------------------------X

WILLIAM H. PAULEY III, District Judge:

        Plaintiffs bring this putative class action and collective action seeking unpaid overtime wages pursuant to the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") against Acme American Environmental Co., Inc., Acme American Repairs, Inc., Acme American Refrigeration, Inc., and Factory Parts & Service Co., Inc. (collectively, the "Acme Group"); and Jeffrey Schwartz, Kenneth Stahn, David Estes, Birinder Madan, Derval Lazzari (collectively, the "Individual Defendants"). 29 U.S.C. § 201 et seq.; New York Labor Law § 190 et seq. Acme Repairs, Acme Refrigeration, and Factory Parts (the "Corporate Moving Defendants") move to dismiss the claims against them. Madan and Lazzari (the "Individual Moving Defendants") also move to dismiss the claims against them. For the following reasons, the Moving Defendants' motions are granted in part and denied in part.

## BACKGROUND

        Acme Environmental cleans commercial kitchen equipment. (Amended and Collective Class Action Complaint, dated May 11, 2012 ("Compl.") ¶ 18.) Acme Refrigeration

installs refrigerators. Acme Repairs maintains and repairs commercial kitchen equipment. (Compl. ¶¶ 19-20.) And Factory Parts sells parts to the other corporations in the Acme Group. (Compl. ¶ 21.) The Acme Group serves a common clientele and operates out of a single location. (Compl. ¶ 36.) They share a supply room and cleaning chemicals and have a common bookkeeper, accountant, and general manager. Each company pays a proportional share of these employees' salaries. (Compl. ¶ 35.)

In 1945, Nathan Uretsky founded Acme Repairs. (Compl. ¶ 31.) Later, Uretsky incorporated Factory Parts to purchase parts and resell them to Acme Repairs. (Compl. ¶ 32.) In 1980, he surrendered his position as president of Acme Repairs to his stepson, Harvey Katzenberg. (Compl. ¶ 33.) Between 1980 and 2001, Katzenberg and Madan acquired Uretsky's equity interest in Acme Repairs and Factory Parts. (Compl. ¶ 33.) Katzenberg also incorporated two new companies: Acme Refrigeration in 1992 and Acme Environmental in 1997. (Compl. ¶ 33.) In 2001, Katzenberg sold his interests in Acme Environmental, Acme Refrigeration, Acme Repair, and Factory Parts to Lazzari. (Compl. ¶ 33.)

Today, Madan and Lazzari co-own each of the companies that comprise the Acme Group. (Compl. ¶¶ 24-25.) Along with the other Individual Defendants, they share offices at the Acme Group's facility. (Compl. ¶ 35.) Madan's workspace is at the center of the office space. (Compl. ¶ 43.) Acme Environmental employees referred to Madan as the "Big Boss" and Lazzari as the "Boss." (Compl. ¶¶ 24-25.) Schwartz sometimes warned Plaintiffs that they needed to improve the quality of their work or the "Big Boss" would be unhappy. (Compl. ¶ 43.) Madan advised one Plaintiff, Alex Duran, that when there was a problem Duran should come to him because he was in charge. (Compl. ¶ 44.) Although Madan never hired any of the Plaintiffs,

he did hire three Acme Environmental employees. (Compl. ¶ 43.) Both Madan and Lazzari had the power to sign reimbursement checks. (Compl. ¶ 45, 48.) Lazzari often directed Plaintiffs and other Acme Environmental employees to clean the Acme Group office and, on at least one occasion, scheduled cleaners to perform work at a commercial kitchen. (Compl. ¶ 43.) Madan and Schwartz directed employees with requests for overtime to Lazzari. (Compl. ¶ 48.)

Schwartz, the President and co-owner of Acme Environmental, directs Acme Environmental employees. (Compl. ¶ 23.) He hires, fires, and disciplines them. (Compl. ¶ 41.) He also travels to work sites to supervise cleaning jobs. (Compl. ¶ 41.)

Plaintiffs worked as professional cleaners for Acme Environmental for varying periods between 2007 and 2011. As part of their employment, Plaintiffs traveled to client locations in the New York metropolitan area, where they provided cleaning services for commercial exhaust systems, including fans, hoods, ducts, and grease traps for commercial kitchens. Occasionally, on their arrival at a work site, Plaintiffs would see employees of another Acme Group company leaving. (Compl. ¶ 36.) At times, Plaintiffs would work with the employees from other Acme Group companies to complete a job. For example, Acme Environmental employees would clean parts, such as belts, that had been removed from appliances by Acme Repairs employees. (Compl. ¶ 38.) Plaintiffs allege that they worked in excess of forty hours per week but Defendants failed to pay them overtime wages.

## DISCUSSION

I.     Legal Standard

On a motion to dismiss, courts accept the facts alleged in the complaint as true and construe all reasonable inferences in plaintiffs' favor. See Grandon v. Merrill Lynch & Co.,

147 F.3d 184, 188 (2d Cir. 1998). Nonetheless, "factual allegations must be enough to raise a right of relief above the speculative level, on the assumption that all of the allegations in the complaint are true." Bell Atl. Corp. v. Twombly, 540 U.S. 544, 556 (2007) (requiring plaintiff to plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [his claim]"). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 555 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citation omitted). "A court ruling on such a motion may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible." Anderson News, LLC, et al. v Am. Media Inc., et al., 680 F.3d 162, 185 (2d Cir. 2012). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). A court's "consideration [on a motion to dismiss] is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991).

II.      FLSA & NYLL Claims

To be liable under the FLSA and NYLL, a person must be an "employer." See Herman v. RSR Sec. Serv. Ltd., 172 F.3d 132, 139 (2d Cir. 1999). An employer under either statute is defined as "any person acting directly or indirectly in the interest of an employer in

-4-

relation to an employee . . . ." 29 U.S.C. § 203(d); see also Spicer v. Pier Sixty LLC, 269 F.R.D. 321, 335 n.13 (S.D.N.Y. 2010) (definitions of "employer" under NYLL and FLSA are coextensive). "The Supreme Court has emphasized the 'expansiveness' of the FLSA's definition of employer." Herman, 172 F.3d at 139 (quoting Falk v. Brennan, 414 U.S. 190, 195 (1973)). "[T]he remedial nature of the statute . . . warrants an expansive interpretation of its provisions so that they will have the widest possible impact in the national economy." Herman, 172 F.3d at 139 (internal quotation marks omitted); see also Barfield v. N.Y.C. Health and Hosps. Corp., 537 F.3d 132, 141 (2d Cir. 2008).

When it comes to "employer" status under the FLSA, control is key. Herman, 172 F.3d at 135 ("[C]ontrol of employees is central to deciding whether appellant should be deemed an employer."). "Control may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA, since such limitations on control do not diminish the significance of its existence." Herman, 172 F.3d at 139 (internal alterations and quotation marks omitted). The "overarching concern" in determining whether an entity is an "employer" is whether the entity "possessed the power to control the workers in question, with an eye to the economic reality presented by the facts of each case." Herman, 172 F.3d at 139 (internal quotation marks and citations omitted).

"Under the 'economic reality' test, the relevant factors include 'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" Herman, 172 F.3d at 139 (quoting Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984). These factors help to determine whether an

entity exercised formal control over an employee. See Zheng v. Liberty Apparel Co., 355 F.3d 61, 67 (2d Cir. 2003). In a case involving joint employment, this test is useful because "when an entity exercises those four prerogatives, that entity, in addition to any primary employer, must be considered a joint employer." Zheng, 355 F.3d at 67.

But, although formal control is sufficient to establish employer liability, it is not essential. See Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253, 309 (S.D.N.Y. 2011) ("[A] court cannot use the Carter factors as an exclusive four-factor test to determine whether an entity is an employer under the FLSA.") (internal alterations and quotation marks omitted). An entity may functionally control workers even when it does not formally control them. See Zheng, 355 F.3d at 67. The Second Circuit analyzes functional control through a six part test:

> The factors we find pertinent in these circumstances, listed in no particular order, are (1) whether [Defendant's] premises and equipment were used for the plaintiffs' work; (2) whether [Defendant] had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line-job that was integral to [Defendant's] process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the [] Defendants or their agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for the [] Defendants.

Zheng, 355 F.3d at 67; see also Slamna v. API Rest. Corp., No. 12 Civ. 757 (RWS), 2012 WL 2979067, at *4 (S.D.N.Y. July 20, 2012).

The formal and functional tests for employment are not "rigid rule[s]." Barfield, 537 F.3d at 143. Rather, they provide "a nonexclusive and overlapping set of factors to ensure that the economic realities test mandated by the Supreme Court is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA." Barfield, 537 F.3d at 143. Ultimately, "employment for FLSA purposes [is] a

-6-

flexible concept [] determined on a case-by-case basis by review of the totality of the circumstances." Barfield, 537 F.3d at 142-43.

Defendants argue that the Amended Complaint fails to allege sufficiently that the Corporate Moving Defendants or the Individual Moving Defendants were "employers" under the FLSA.

### A. Corporate Moving Defendants

All of the companies within the Acme Group were under common control. (Compl. ¶¶ 22, 30, 34.) They operated from a single facility and shared key employees, including a bookkeeper, an accountant, and a general manager. (Compl. ¶ 35.) These companies shared a common clientele and worked for a common purpose: providing a full range of services to companies with commercial kitchens. (Compl. ¶¶ 36, 46, 49.) Plaintiffs assert that these facts establish that all three corporate defendants formed an integrated enterprise and share employer liability.

Under the FLSA, companies that are part of an "integrated enterprise" or "engaged in a joint venture" may nevertheless employ separate people and, absent control, are not liable for the separate employees of joint ventures. See, e.g., Cannon v. Douglas Elliman, LLC, No. 06 Civ. 7092 (NRB), 2007 WL 4358456, at *4 n.3 (S.D.N.Y. Dec. 10, 2007). Although they allege an "integrated enterprise," Plaintiffs cannot escape their obligation under the FLSA to allege a relationship of control between the Corporate Moving Defendants and themselves. Allegations of common ownership and common purpose, without more, do not answer the fundamental question of whether each corporate entity controlled Plaintiffs as employees. See Wolman v. Catholic Health Sys. of Long Island, Inc., --- F. Supp. 2d ----, 2012

WL 566255, at *5 (E.D.N.Y. 2012) ("These facts, while perhaps establishing some general commonalities between Defendants, do not touch on the central issue: whether Defendants exercised sufficient control over Plaintiffs to be considered their joint employers under the FLSA."); see also Sampson v. MediSys Health Network, Inc., No. 10 CV 1342 (SJF)(ARL), 2012 WL 3027838, at *1 (E.D.N.Y. July 24, 2012).

Plaintiffs fail to allege that the Corporate Moving Defendants exercised formal control over them. While the Corporate Moving Defendants shared a common bookkeeper, accountant, and general manager, none of the Corporate Moving Defendants had the power to hire the Plaintiffs or other members of Acme Environmental. Plaintiffs do not allege that any of the Corporate Moving Defendants supervised or controlled their work schedules or payments, and they do not allege that the Corporate Moving Defendants maintained the records of Acme Environmental's employees. Although Plaintiffs allege that Madan and Lazzari supervised Schwartz, hired employees, and controlled pay rates, they do not allege that Madan or Lazarri did so in their capacities as owners or officers of the Corporate Moving Defendants. Further, Plaintiffs allege no theory under which Acme Environmental's acts can be imputed to the Corporate Moving Defendants. Cf. Wolman, 2012 WL 566255, at *5 (analyzing whether a sister company in an integrated enterprise could be liable for FLSA violations under theories of agency and alter-ego liability).

Similarly, Plaintiffs fail to allege that the Corporate Moving Defendants had functional control over the Plaintiffs. To be sure, Acme Environmental shares offices with the other companies in the Acme Group, and all of the companies within the Acme Group shared cleaning supplies. But Acme Environmental does not share its cleaning business with other

companies in the group. Its cleaning business is not fungible, and its professional cleaning services were not performed by employees of Acme Repair, Acme Refrigeration, or Factory Parts. Similarly, Acme Environmental's employees did not simply perform "a discrete line-job" integral to the Acme Group's "process of production." Zheng, 355 F.3d at 67. The Acme Group produces nothing. It is a collection of companies that perform separate services to accommodate the needs of commercial kitchen owners. When Acme Environmental performed on its contracts, responsibility for and supervision of Acme Environmental's employees never passed to the Corporate Moving Defendants. Instead, "at all times relevant," Acme Environmental's employees reported directly to Schwartz, their supervisor within Acme Environmental, "who had the power to direct and evaluate the work of Plaintiffs . . . and to hire, fire, and schedule." (Compl. ¶ 23, 41.)

As an "economic reality," the Corporate Moving Defendants had no control over Acme Environmental's cleaners. The bookkeeper, accountant, and general manager of the Acme Group provide a foil to illustrate this point. Unlike Plaintiffs, these shared employees were paid by each company within the group. (Compl. ¶ 35.) As they performed their duties to each company, their business shifted from one employer to another. And, as managers and administrators, their services were not for clients; they worked exclusively for the companies in the Acme Group. Each member of the Acme Group had functional control over the shared employees. By contrast, Acme Repairs, Acme Refrigeration, and Factory Parts had no control over Acme Environmental's cleaners. Because Plaintiffs fail to allege that the "economic reality" of the relationship between Plaintiffs and the Corporate Moving Defendants was one of control, they fail to state an FLSA or NYLL claim against the Corporate Moving Defendants.

B. <u>Individual Moving Defendants</u>

Plaintiffs sufficiently allege that Madan and Lazarri had functional control over them. First, Plaintiffs allege that Madan hired three Acme Environmental employees. (Compl. ¶ 43.) Even though Madan did not hire any of the Plaintiffs, control "may be restricted, or exercised only occasionally." <u>Herman,</u> 172 F.3d at 139 (internal alterations and quotation marks omitted). "[I]t does not matter that [a defendant] has delegated his powers to others. What is critical is that [the defendant] has those powers to delegate." <u>Torres v. Gristede's Operating Corp.,</u> No. 04 Civ. 3316 (PAC), 2011 WL 4571792, at *2 (S.D.N.Y. Sept. 9, 2011) (internal citations omitted). Second, Schwartz thought of Madan and Lazzari as his "boss[es]." (Compl. ¶ 42, 44.) Madan specifically told one of the Plaintiffs that he was in charge and that any problems should be reported to him. (Compl. ¶ 44.) Similarly, Lazzari directed Plaintiffs to clean the office and, while he did not schedule Plaintiffs' work regularly, Lazzarri demonstrated his power to do so by sending them to a job site on at least one occasion. (Compl. ¶ 43.) Third, Plaintiffs were instructed to bring their complaints about hours or pay to Madan and Lazzari. Finally, Acme Environmental employees were advised by Schwartz to direct their overtime requests to Lazarri. Because these allegations establish that the "economic reality" of the relationship between Plaintiffs and the Individual Defendants was one of control, the Individual Moving Defendants state a claim under the FLSA. Accordingly their motion to dismiss is denied.

III.    <u>Breach of Contract and Unjust Enrichment Claims</u>

Plaintiffs assert third-party beneficiary breach of contract claims and unjust enrichment claims against Defendants. "It is ancient law in New York that to succeed on a third party beneficiary theory, a non-party must be the intended beneficiary of the contract, not an

incidental beneficiary to whom no duty is owed." Madeira v. Affordable Hous. Found., Inc., 469 F.3d 219, 251-52 (2d Cir. 2006) (quoting Cnty. of Suffolk v. Long Island Lighting Co., 728 F.2d 52, 63 (2d Cir. 1984)). "A party asserting rights as a third-party beneficiary must establish '(1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost.'" State of Cal. Pub. Emps. Ret. Sys. v. Shearman & Sterling, 95 N.Y.2d 427, 434-35 (1983). Absent a binding contract, "[t]o state a claim for unjust enrichment in New York, a plaintiff must allege that: (1) the defendant was enriched; (2) the enrichment was at plaintiff's expense; and (3) the circumstances were such that equity and good conscience require defendant to make restitution." Grund v. Del. Charter Guar. & Trust Co., 788 F. Supp. 2d 226, 251 (S.D.N.Y. 2011) (internal citations omitted).

   Here, Plaintiffs claim they are third-party beneficiaries to public works contracts. Specifically, they claim that "Defendants contracted with public agencies" and that they "are entitled to recover from Defendants the difference between the rate that they were paid to perform work under these contracts and the prevailing wage rate." (Compl. ¶ 104, 107.) Plaintiffs neither specify the Defendants who contracted with public agencies nor make any specific allegations regarding the content or existence of these contracts. Therefore, these threadbare allegations do not plausibly state a claim. Iqbal, 556 U.S. at 662. But, because it is plausible that Plaintiffs performed work under such contracts, leave to amend is warranted.

   Plaintiffs' unjust enrichment claims also fail against the Corporate Moving Defendants. Plaintiffs allege that "Defendants, by their policies and actions, benefited from, and

increased their profits and personal compensation by failing to pay Plaintiffs." (Compl. ¶ 119.) But, given that the Corporate Moving Defendants did not employ Acme Environmental's cleaners and were not responsible for their wages, the complaint fails to state how Acme Repairs, Acme Refrigeration, or Factory Parts benefited from Acme Environmental's failure to pay its employees overtime wages. By contrast, the Individual Moving Defendants had control over Acme Environmental's cleaners and had an interest in Acme Environmental such that they would benefit from Acme Environmental's failure to pay overtime wages. Accordingly, the complaint states a claim of unjust enrichment against Madan and Lazzari.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are granted in part and denied in part. The Corporate Moving Defendants' motion to dismiss Plaintiffs' FLSA, NYLL, and unjust enrichment claims is granted. The Individual Moving Defendants' motion to dismiss Plaintiffs' FLSA, NYLL, and unjust enrichment claims is denied. Plaintiffs' breach of contract claims against all Moving Defendants are dismissed with leave to amend. Plaintiff must file and serve any amended complaint by December 21, 2012. The Clerk of the Court is directed to terminate the motions pending at ECF No. 53.

Dated:   December 6, 2012
         New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.

*Counsel of Record*:

Nancy Kaboolian
Abbey Spanier Rodd Abrams & Paradis, LLP
212 East 39th Street
New York, NY 10016
*Counsel for Plaintiffs*

Jon Andrew Ward
Sahn Ward & Baker, PLLC
333 Earle Ovington Boulevard, Suite 601
Uniondale, NY 11553
*Counsel for Corporate Defendants*

Anthony Paduano
Paduano & Weintraub
1251 Avenue of the Americas, 9th Floor
New York, NY 10020
*Counsel for Individual Defendants*